# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CLAIRE PAYTON AND JONATHAN KATZ<br><br>*Plaintiffs*,<br><br>v.<br><br>LIANA ARIAS DE VELASCO GUALLART AND CHRISTOPHER TSCHAPATT,<br><br>*Defendants.* | CASE NO. 3:22-cv-00042<br><br><u>MEMORANDUM OPINION</u><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Plaintiffs' Motion for Entry of Default Judgment, Dkt. 11, and Defendants' Motion to Vacate Entry of Default and Opposition to Motion for Entry of Default Judgment, Dkt. 13. For the following reasons, the Court will deny Plaintiffs' Motion for Entry of Default Judgment, and grant Defendants' Motion to Vacate Entry of Default.

## Background

Plaintiffs are a married couple with a child, and they bring this action under the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and the Virginia Fair Housing Law ("VFHL"), Va. Code Ann. §§ 36-96.1–96.73. They file suit against their former landlords, Defendants, a married couple, for (1) discriminating against them in the provision of rental housing based on familial status, (2) stating a discriminatory policy or preference against renting to families with children, and (3) retaliating against them for asserting their rights under the FHA and VFHL. Plaintiffs filed a housing discrimination complaint against Defendants with the Virginia Fair Housing Office ("VFHO"), alleging violations of the FHA and VFHL, on August 14, 2020. Compl.

¶ 15. They amended it on August 27, 2020. *Id.* Before this administrative complaint was resolved, Plaintiffs voluntarily withdrew their VFHO claim on June 23, 2022 to pursue their claims in federal court. *Id.* VFHO closed their complaint on June 27, 2022. *Id.*

Under Count I, Plaintiffs argue that Defendants discriminated against them on the basis of their familial status in violation of the FHA, 42 U.S.C. § 3604(a), (b), and (c). Compl. ¶¶ 101–04. Under § 3604(a), it is unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of . . . familial status . . . ." Under § 3604(b), it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . familial status . . . ." Section 3604(c) states that it is unlawful

> [t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . familial status . . . or an intention to make any such preference, limitation, or discrimination.

Under Count II, Plaintiffs argue that Defendants retaliated against them in violation of the FHA, 42 U.S.C. § 3617. Compl. ¶¶ 105–09. Section 3617 dictates that

> [i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section . . . 3604 [of the Fair Housing Act].

Plaintiffs accordingly contend that "Defendants' retaliation against Plaintiffs for asserting their rights and pursuing legal action under the Fair Housing Act, including refusing to renew or extend their lease and unlawfully withholding their security deposit, violated Plaintiffs' rights under 42 U.S.C. § 3617." Compl. ¶ 107.

Under Count III, Plaintiffs argue the Defendants discriminated against them because of their familial status in violation of the VFHL, Va. Code Ann. § 36-96.3(A). Compl. ¶¶ 110–13. Under § 36-96.3(A)(1), it is unlawful to "[r]efuse to sell or rent after the making of a bona fide offer or refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of . . . familial status . . ." Under § 36-96.3(A)(2), it is unlawful to "[d]iscriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in the connection therewith to any person because of . . . familial status . . ." And under § 36-96.3(A)(3), it us unlawful to

> [m]ake print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination or an intention to make any such preference, limitation, or discrimination on the basis of . . . familial status . . . .

Under Count IV, Plaintiffs argue that Defendants retaliated against them in violation of the VFHL, Va. Code Ann. § 36-96.5. Compl. ¶¶ 114–18. Under Va. Code Ann. § 36-96.5, it is unlawful for anyone to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on the account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the VFHL]."

Plaintiffs allege that, "[w]hen Defendants learned in April 2020 that [Plaintiff] Payton was pregnant, they refused to renew Plaintiffs' lease . . . because, as Defendant Guallart wrote in a text message to Plaintiff Katz on April 12, 2020: 'We don't take . . . families with children . . . .'" Compl. ¶ 1. Just three days after learning that Plaintiffs were expecting a child, Defendants refused to renew Plaintiffs' lease. *Id.* Plaintiffs signed a two-year lease for the Apartment on May 25, 2018, which Defendants executed on May 30, 2018, and the lease ran from August 6, 2018, to July 31, 2020. *Id.* ¶ 29. The lease provided for automatic renewal, unless either Plaintiffs or Defendants

notified the other Party at least 90 days prior to the end of the lease term that they wished to terminate the lease or Defendants notified Plaintiffs of a change in lease terms. *Id.* ¶ 30. While tenants, Plaintiffs always made timely payments, complied with the terms of their lease, and were never cited for any lease violations. *Id.* ¶ 34. Defendant Guallart even described Plaintiffs as "'fantastic' tenants in a reference to a subsequent landlord." *Id.* ¶ 34.

Six weeks before Plaintiffs' lease required them to decide whether to renew it, and over four months before the lease was set to expire, Defendant Guallart texted Plaintiff Katz "to 'double check with [him] about [his and his wife's] plans for next year' and to ask whether [they] intended to renew their lease." *Id.* ¶ 38. "At that early date, Plaintiffs were uncertain about their plans." *Id.* ¶ 39. Thus, Plaintiff Katz responded "that they hoped to stay for at least another year but that they were not certain, at present, whether they would renew." *Id.* Defendant Guallart informed Plaintiff Katz that she and her husband "had started advertising the Apartment" on April 12, 2020, also expressing that "[a]s long as nothing changes on your end, we are happy to renew with you guys." *Id.* ¶¶ 41, 44. Plaintiff Katz texted Defendant Guallart to confirm that they had until May 2, 2020 to inform the Defendants about whether they wanted to renew their lease, and Defendant Guallart responded: "Other things remaining the same or better as i [sic] wrote above, yes, we can do a new lease for the two of you. Your parents found their own place right? Let us know if there are any changes on the number of people staying with you." *Id.* ¶ 46. Plaintiff Katz replied, confirming his parents found lodging and asking, "What do you mean by the number of people staying with us?" *Id.* ¶ 47. In response, Defendant Guallart "cited noise concerns and informed him that Defendants 'don't take . . . families with children.'" *Id.* ¶ 48.

The next day, Plaintiff Katz formally notified Defendant Guallart that his wife, Plaintiff Payton, was pregnant and "warned [Defendant] that a policy against renting to families with

children violated the lease, federal law, and state law." *Id.* ¶ 49. Defendant Guallart "congratulated Plaintiffs but explained that having a baby in the apartment would likely violate the noise policy in the lease and that a baby would likely disturb the neighbors in the adjoining unit." *Id.* ¶ 50. Defendant also "told the neighbor that [Plaintiff] Payton was pregnant and warned her that the baby would likely be noisy. When the neighbor shared this information with Plaintiffs, the neighbor told them that she did not share Defendants' concern about the noise of a baby." *Id.* ¶ 52. Plaintiff Katz again reiterated via text that discriminating on the basis of familial status is illegal. "Citing the FHA and VFHL, he explained [to Defendant Guallart] that, 'You can't prohibit families with children from renting an apartment on the basis of noise concerns.'" *Id.* ¶ 54. In support of that point, he attached a 2016 white paper published by the National Multifamily Housing Coalition, a national trade association for rental housing providers, describing the FHA's familial status discrimination prohibition and how a landlord's concerns about noise from a child may not legally be considered in deciding whether to rent to a family." *Id.* He also provided "a citation to the parallel provision of the VFHL." *Id.*

On April 15, 2020, Plaintiff Katz asserted that "now that Plaintiffs had advised Defendants of their rights under the FHA and the VFHL, a refusal to renew Plaintiffs' lease would be plainly unlawful." *Id.* ¶ 57. A little over an hour later, Defendant Guallart "responded by email, writing, 'Please take this note as a confirmation that we will not renew the lease with you in August.'" *Id.* ¶ 58. Further, the Defendant "called the recent text exchange with [Plaintiff] the 'last straw' in motivating Defendants' nonrenewal decision. She labeled [his] comments about her discriminatory statements and conduct as 'inappropriate,' reflective of 'a terrible attitude on your part,' and an 'overly defensive reaction to perfectly reasonable requests for solutions to a potential

problem.'" *Id.* ¶ 60. Nine days later, "Defendants placed a written notice under Plaintiffs' door, labeled 'LEASE CANCELLATION NOTICE.'" *Id.* ¶ 62.

Plaintiffs proposed three options: (1) to renew the lease, (2) to extend the lease, or (3) to take the matter to court. *Id.* ¶¶ 69–70. Defendants described the proposal as "bullying" and rejected the options, "expressly inviting Plaintiffs to bring legal action." *Id.* ¶ 71.

After Plaintiffs asserted their fair housing rights and pursued legal action through the VFHO, *id.* ¶¶ 84–89, "Defendants improperly withheld Plaintiffs' security deposit for nearly six months." *Id.* ¶ 90. The lease terms provided that "Defendants were required to return Plaintiffs' $1,675.00 security deposit (with accrued interest) within 45 days of the termination of their tenancy, minus any permissible deductions. The lease further required that, if any deductions were made, Defendants provide an itemized list of all deductions within that same 45-day period." *Id.* ¶ 91. Plaintiffs moved out of the apartment on July 26, 2020, and on July 31, 2020, Defendant Guallart stated, "We will wait for the water bill and mail the deposit minus any other things needed if any to you Asap [sic]." *Id.* ¶ 92. Then, on August 31, 2020, Defendants notified Plaintiffs that they would receive "$1292.92 of their $1675.00 security deposit, reflecting a permissible deduction of $82.08 for their final water bill, in addition to $300 for [Defendants'] time spent preparing the Apartment for the next tenant, including 'cleaning' that Plaintiffs had already done and incidental costs." *Id.* ¶ 93. But, "Defendants did not return the security deposit, or any portion thereof, to Plaintiffs within the 45-day deadline set by the lease (i.e., by September 14, 2020)," *id.* ¶ 94, and they failed to pay Plaintiffs the full amount due even after Plaintiffs succeeded in a small claims action against them. *Id.* ¶¶ 95–97.

**Applicable Law**

A defendant must answer or otherwise respond to a complaint within 21 days of service of the complaint and summons. Fed. R. Civ. P. 12(a)(1)(A)(i). But when a party has failed to timely file a response, "and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

Rule 55(c) provides, in relevant part, that "[t]he court may set aside an entry of default for good cause." In so ruling, a district court should consider "[1] whether the moving party has a meritorious defense, [2] whether it acts with reasonable promptness, [3] the personal responsibility of the defaulting party, [4] the prejudice to the party, [5] whether there is a history of dilatory action, and [6] the availability of sanctions less drastic." *Mavila v. Absolute Collection Service, Inc.*, 539 F. App'x 202, 204-05 (4th Cir. 2013). The Fourth Circuit has long held that "Rule 55(c) motions must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'" *Colleton Prep. Acad., Inc. v. Hoover Univ., Inc.*, 616 F.3d 413, 421 (4th Cir. 2010) (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)). "Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." *Tolson*, 411 F.2d at 130.

### Discussion

1. <u>Whether Movants Have a Meritorious Defense</u>

"In the context of a defendant's motion to set aside the entry of default or default judgment, a meritorious defense will be established if the defendant proffers evidence that, if believed, would permit the court to find for the prevailing party." *Belvac Prod. Mach., Inc. v. Standard Indus. Prods. Co.*, No. 6:06-cv-00034, 2007 WL 1189644, at *2 (W.D. Va. Apr. 23, 2007). The defendant bears a minimal burden. *Id.* "A meritorious defense requires a proffer of evidence which would

permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1998). If the defendant offers a "bare allegation of a meritorious defense," the trial court, "in its discretion," could "requir[e] disclosure of facts to support such a conclusory assertion." *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 252 (4th Cir. 1967). And while "[t]he burden for proffering a meritorious defense is not onerous, [] the defenses must 'allege[] specific facts beyond simple denials of conclusionary statements.'" *Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Cor.*, 812 F. Supp. 2d 710, 724 (E.D. Va. 2011) (internal reference omitted); *see Consol. Masonry & Fireproofing, Inc.*, 383 F.2d at 251–52 (discussing that a defendant failed to support its meritorious defense when it "did not more than allege in conclusory fashion that it had a meritorious defense").

Defendants initially argued that they have a meritorious defense, in that "Plaintiffs cherry-pick text messages and present them in a wildly out-of context manner," and "make no allegations of actual damages." Dkt. 14 at 3. And in their reply brief in support of their motion to set aside the entry of default pursuant to Rule 55(c), Defendants provide more argument regarding the meritorious defense prong. Dkt. 16. They explain that failure to have damages would be grounds for summary judgment; a default judgment would trigger the attorneys' fees provisions of the Fair Housing Act, which would not be recoverable if Defendants prevailed on summary judgment; and Plaintiffs have no monetary damages. *Id.* at 1–2. But, based on the facts discussed above, it appears Plaintiffs did allege facts supporting their request for damages. Compl. at 6 ("Plaintiffs seek compensatory damages for their monetary and non-monetary injuries, punitive damages, injunctive relief, and their attorneys' fees and costs."). Defendants also discuss in their reply brief that Plaintiffs have taken the text messages they cite out of context. Dkt. 16 at 2.

The Court need not, at this time, determine whether Defendants mount a meritorious defense, as no other factor weighs in Plaintiffs' favor when considering whether to vacate entry of default.

    2.  <u>Whether Movant Acted with Reasonable Promptness</u>

When deciding whether a defendant acted in a reasonably prompt manner when moving to set aside a default, courts must consider the "facts and circumstances of each occasion." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) (explaining the standard in the context of a Rule 60(b) motion).

The Defendants allege having learned of the Court's entry of default on September 14, 2022. Dkt. 14 at 3. They returned from a three-month trip to Spain and found a copy of the complaint on their door, then immediately contacted a friend who is an attorney and learned of the default. *Id.* On September 30, 2022, Defendants contacted and engaged counsel. *Id.* Counsel filed a notice of appearance on Defendants' behalf on September 30, 2022. Dkt. 12. And on October 4, 2022, Defendants, through counsel, filed their motion to set aside the entry of default pursuant to Rule 55(c). Dkt. 13.

The Fourth Circuit and courts within the Circuit have previously held that a defendant acted reasonably promptly when filing a motion to vacate a default after a longer delay than here. *Parks v. Discount Box and Pallet, Inc.*, No. 5:12-cv-081, 2013 WL 662951, at *6 (W.D. Va. Feb. 22, 2013) (citing *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 952–54 (4th Cir. 1987) (moving party delayed ten months before filing motion to set aside default); *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009) (moving party did not act for more than two months after default was entered but responded to motion for entry of default judgment within a few weeks); *Wainwright's Vacations,*

*LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 717 (D. Md. 2001) (moving party did not move to vacate default until over a month after default was entered)). As Defendants contacted and engaged counsel around two weeks after learning of entry of default, the reasonable promptness factor weighs in favor of the Defendants' motion to set aside the default.

3.   Personal Responsibility of Defaulting Party

This factor typically considers "whether the default was primarily traceable to the defendant's actions or oversight by their counsel." *Goldbelt Wolf, LLC v. Operational Wear Armor, LLC*, No. 1:15-cv-1268, 2016 WL 726532, at *6 (W.D. Va. Feb. 22, 2016). And "[a]dequate service of process is relevant in deeming a defaulting defendant personally responsible for a failure to file a responsive pleading." *Armeni v. Trans Union LLC, Inc.*, 3:15-cv-00066, 2016 WL 40985640, at *5 (W.D. Va. July 28, 2016) (internal citation omitted).

Here, Plaintiffs properly served Defendants by leaving the complaint on their front door and posting the complaint to Defendants. Dkts. 6, 7, 14 at 3; Va. Code § 8.01-296. But Defendants did not see the complaint until they returned from Spain. Dkt. 14 at 3. Upon returning from Spain and learning of the entry of default, Defendants quickly sought counsel. In light of the Fourth Circuit's "strong preference that, as a general matter, defaults be avoided," *Colleton Preparatory Acad'y, Inc.*, 616 F.3d at 417, this, without any sign of failing to take personal responsibility, weighs in favor of their motion to set aside the default.

4.   Prejudice to the Party

The Court next considers whether Plaintiffs would suffer prejudice if the Court vacated entry of default. *See id.* at 419 ("the issue is one of *prejudice to the adversary*, not merely the existence of delay"). The Court finds this factor also weighs in favor of vacating entry of default.

"In the context of a motion to set aside an entry of default . . . delay in and of itself does not constitute prejudice to the opposing party." *Id.* at 418 (internal reference omitted). Here, the Plaintiffs allege that they already engaged in the administrative process for resolving their claims and voluntarily withdrew their claims after two years in that process. The Plaintiffs are already familiar with the facts and likely defenses in the case. The record does not indicate any particular prejudice to the Plaintiff if default is set aside, just the existence of delay.


5.   <u>History of Dilatory Action</u>

"Courts often look to whether there are other instances of dilatory action on the part of the defaulting party as a factor to determine whether setting aside entry of default is warranted." *Pinpoint IT Servs.*, 812 F. Supp. 2d at 727 (citing *Colleton*, 616 F.3d at 418).

Plaintiffs argue that "Defendants' delays in discovering this lawsuit and in retaining counsel are part of a longstanding pattern of dilatory conduct related to this action." Dkt. 15 at 11. They support this argument by describing that Defendants improperly withheld Plaintiffs' security deposit in violation of the parties' lease terms, failed to refund the deposit plus costs and interests for three weeks after the Charlottesville General Court ordered Defendants to do so, and only made a partial payment when they did make the payment. *Id.* That is, they refused to pay costs and interests, saying that the judge made an error in ordering them to do so. *Id.* These tactics may be unfavorable for Plaintiffs, but they are not dilatory tactics, i.e., methods by which a party abuses

the rules of procedure to delay legal proceedings. Thus, this factor weighs in favor of Defendants motion to vacate entry of default judgment.

### 6. Availability of Sanctions Less Drastic

As to the last factor, there are certainly sanctions less drastic than entering default. In vacating entry of default or default judgment, the Court may "impose other sanctions against the offending attorney, such as awarding the non-movant's costs and attorney's fees." *Augusta Fiberglass*, 843 F.2d at 811 (so holding with respect to vacating default judgment); *see also Saunders v. Metro. Prop. Mgmt., Inc.*, 806 F. App'x 165, 168 (4th Cir. 2020) (unpublished) (affirming district court's decision to set aside entry of default while awarding plaintiff's attorney's fees).

### Conclusion

"[T]he law disfavors disposition by default and accords preference to resolving a case on its merits." *Saunders*, 2020 WL 1313346, at *3 (citations omitted). The Court finds that Defendants acted with reasonable promptness in moving to set aside default; they showed personal responsibility; there was no history of dilatory conduct; no prejudice shown to Plaintiffs; and less drastic alternatives are available besides default judgment.

As five of the six factors weigh in favor of setting aside the default, the Court will grant Defendants' motion to vacate entry of default.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this __11th__ day of November, 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE