UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CLAIRE PAYTON AND JONATHAN KATZ<br><br>        *Plaintiffs*,<br>v.<br><br>LIANA ARIAS DE VELASCO GUALLART AND CHRISTOPHER TSCHAPATT,<br><br>        *Defendants*. | CASE NO. 3:22-cv-00042<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

   This matter is before the Court on Defendant Christopher Tschappatt's Motion to Dismiss, Dkt. 19. Defendant Tschappatt argues that Plaintiffs make no factual allegations against him. As Plaintiffs allege sufficient facts against him to survive a motion to dismiss, the Court will deny his motion.

**Background**

   The following facts are alleged in Plaintiff's Complaint and assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (reiterating the appropriate standard of review). Plaintiffs Payton and Katz are a married couple with a child, and they bring this action under the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and the Virginia Fair Housing Law ("VFHL"), Va. Code Ann. §§ 36-96.1–96.73. They file suit against their former landlords, Defendants Arias de Velasco Guallart and Tschappatt, a married couple, for (1) discriminating against them in the provision of rental housing based on familial status, (2) stating a discriminatory policy or preference against renting to families with children, and (3) retaliating against them for asserting their rights under the FHA and VFHL. Plaintiffs filed a

1

housing discrimination complaint against Defendants with the Virginia Fair Housing Office ("VFHO"), alleging violations of the FHA and VFHL, on August 14, 2020. Compl. ¶ 15. They amended it on August 27, 2020. *Id.* Before this administrative complaint was resolved, Plaintiffs voluntarily withdrew their VFHO claim on June 23, 2022 to pursue their claims in federal court. *Id.* VFHO closed their complaint on June 27, 2022. *Id.*

In Count I, Plaintiffs argue that Defendants discriminated against them on the basis of their familial status in violation of the FHA, 42 U.S.C. § 3604(a), (b), and (c). Compl. ¶¶ 101–04. Under § 3604(a), it is unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of . . . familial status . . . ." Under § 3604(b), it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . familial status . . . ." Section 3604(c) states that it is unlawful

> [t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . familial status . . . or an intention to make any such preference, limitation, or discrimination.

Under Count II, Plaintiffs argue that Defendants retaliated against them in violation of the FHA, 42 U.S.C. § 3617. Compl. ¶¶ 105–09. Section 3617 dictates that

> [i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section . . . 3604 [of the Fair Housing Act].

Plaintiffs accordingly contend that "Defendants' retaliation against Plaintiffs for asserting their rights and pursuing legal action under the Fair Housing Act, including refusing to renew or extend

their lease and unlawfully withholding their security deposit, violated Plaintiffs' rights under 42 U.S.C. § 3617." Compl. ¶ 107.

Under Count III, Plaintiffs argue the Defendants discriminated against them because of their familial status in violation of the VFHL, Va. Code Ann. § 36-96.3(A). Compl. ¶¶ 110–13. Under § 36-96.3(A)(1), it is unlawful to "[r]efuse to sell or rent after the making of a bona fide offer or refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of . . . familial status . . . ." Under § 36-96.3(A)(2), it is unlawful to "[d]iscriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in the connection therewith to any person because of . . . familial status . . . ." And under § 36-96.3(A)(3), it us unlawful to

> [m]ake print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination or an intention to make any such preference, limitation, or discrimination on the basis of . . . familial status . . . .

In Count IV, Plaintiffs argue that Defendants retaliated against them in violation of the VFHL, Va. Code Ann. § 36-96.5. Compl. ¶¶ 114–18. Under Va. Code Ann. § 36-96.5, it is unlawful for anyone to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on the account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the VFHL]."

Plaintiffs allege that, "[w]hen Defendants learned in April 2020 that [Plaintiff] Payton was pregnant, they refused to renew Plaintiffs' lease . . . because, as Defendant Guallart wrote in a text message to Plaintiff Katz on April 12, 2020: 'We don't take . . . families with children . . . .'" Compl. ¶ 1. Just three days after learning that Plaintiffs were expecting a child, Defendants refused to renew Plaintiffs' lease. *Id.* Plaintiffs signed a two-year lease for the apartment on May 25, 2018,

3

which Defendants executed on May 30, 2018, and the lease ran from August 6, 2018, to July 31, 2020. *Id.* ¶ 29. The lease provided for automatic renewal, unless either Plaintiffs or Defendants notified the other Party at least 90 days prior to the end of the lease term that they wished to terminate the lease or Defendants notified Plaintiffs of a change in lease terms. *Id.* ¶ 30. While tenants, Plaintiffs always made timely payments, complied with the terms of their lease, and were never cited for any lease violations. *Id.* ¶ 34. Defendant Guallart even described Plaintiffs as "'fantastic' tenants in a reference to a subsequent landlord." *Id.* ¶ 34.

Six weeks before Plaintiffs' lease required them to decide whether to renew it, and over four months before the lease was set to expire, Defendant Guallart texted Plaintiff Katz "to 'double check with [him] about [his and his wife's] plans for next year' and to ask whether [they] intended to renew their lease." *Id.* ¶ 38. "At that early date, Plaintiffs were uncertain about their plans." *Id.* ¶ 39. Thus, Plaintiff Katz responded "that they hoped to stay for at least another year but that they were not certain, at present, whether they would renew." *Id.* Defendant Guallart informed Plaintiff Katz that she and her husband "had started advertising the Apartment" on April 12, 2020, also expressing that "[a]s long as nothing changes on your end, we are happy to renew with you guys." *Id.* ¶¶ 41, 44. Plaintiff Katz texted Defendant Guallart to confirm that they had until May 2, 2020 to inform the Defendants about whether they wanted to renew their lease, and Defendant Guallart responded: "Other things remaining the same or better as i [sic] wrote above, yes, we can do a new lease for the two of you. Your parents found their own place right? Let us know if there are any changes on the number of people staying with you." *Id.* ¶ 46. Plaintiff Katz replied, confirming his parents found lodging and asking, "What do you mean by the number of people staying with us?" *Id.* ¶ 47. In response, Defendant Guallart "cited noise concerns and informed him that Defendants 'don't take . . . families with children.'" *Id.* ¶ 48.

4

The next day, Plaintiff Katz formally notified Defendant Guallart that his wife, Plaintiff Payton, was pregnant and "warned [Defendant] that a policy against renting to families with children violated the lease, federal law, and state law." *Id.* ¶ 49. Defendant Guallart "congratulated Plaintiffs but explained that having a baby in the apartment would likely violate the noise policy in the lease and that a baby would likely disturb the neighbors in the adjoining unit." *Id.* ¶ 50. Defendant also "told the neighbor that [Plaintiff] Payton was pregnant and warned her that the baby would likely be noisy. When the neighbor shared this information with Plaintiffs, the neighbor told them that she did not share Defendants' concern about the noise of a baby." *Id.* ¶ 52. Plaintiff Katz again reiterated via text that discriminating on the basis of familial status is illegal. "Citing the FHA and VFHL, he explained [to Defendant Guallart] that, 'You can't prohibit families with children from renting an apartment on the basis of noise concerns.'" *Id.* ¶ 54. For support, he provided "a 2016 white paper published by the National Multifamily Housing Coalition, a national trade association for rental housing providers, describing the FHA's familial status discrimination prohibition and how a landlord's concerns about noise from a child may not legally be considered in deciding whether to rent to a family." *Id.* He also included "a citation to the parallel provision of the VFHL." *Id.*

On April 15, 2020, Plaintiff Katz asserted that "now that Plaintiffs had advised Defendants of their rights under the FHA and the VFHL, a refusal to renew Plaintiffs' lease would be plainly unlawful." *Id.* ¶ 57. A little over an hour later, Defendant Guallart "responded by email, writing, 'Please take this note as a confirmation that we will not renew the lease with you in August.'" *Id.* ¶ 58. Further, the Defendant "called the recent text exchange with [Plaintiff] the 'last straw' in motivating Defendants' nonrenewal decision. She labeled [his] comments about her discriminatory statements and conduct as 'inappropriate,' reflective of 'a terrible attitude on your

5

part,' and an 'overly defensive reaction to perfectly reasonable requests for solutions to a potential problem.'" *Id.* ¶ 60. Nine days later, "Defendants placed a written notice under Plaintiffs' door, labeled 'LEASE CANCELLATION NOTICE.'" *Id.* ¶ 62.

Plaintiffs proposed three options: (1) to renew the lease, (2) to extend the lease, or (3) to take the matter to court. *Id.* ¶¶ 69–70. Defendants described the proposal as "bullying" and rejected the options, "expressly inviting Plaintiffs to bring legal action." *Id.* ¶ 71.

After Plaintiffs asserted their fair housing rights and pursued legal action through the VFHO, *id.* ¶¶ 84–89, "Defendants improperly withheld Plaintiffs' security deposit for nearly six months." *Id.* ¶ 90. The lease terms provided that "Defendants were required to return Plaintiffs' $1,675.00 security deposit (with accrued interest) within 45 days of the termination of their tenancy, minus any permissible deductions." *Id.* ¶ 91. And, "the lease further required that, if any deductions were made, Defendants provide an itemized list of all deductions within that same 45-day period." *Id.* Plaintiffs moved out of the apartment on July 26, 2020, and on July 31, 2020, Defendant Guallart stated, "We will wait for the water bill and mail the deposit minus any other things needed if any to you Asap [sic]." *Id.* ¶ 92. Then, on August 31, 2020, Defendants notified Plaintiffs that they would receive "$1292.92 of their $1675.00 security deposit, reflecting a permissible deduction of $82.08 for their final water bill, in addition to $300 for [Defendants'] time spent preparing the Apartment for the next tenant, including 'cleaning' that Plaintiffs had already done and incidental costs." *Id.* ¶ 93. But "Defendants did not return the security deposit, or any portion thereof, to Plaintiffs within the 45-day deadline set by the lease (i.e., by September 14, 2020)," *id.* ¶ 94, and they failed to pay Plaintiffs the full amount due even after Plaintiffs succeeded in a small claims action against them. *Id.* ¶¶ 95–97.

**Standard of Review**

6

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The purpose of a Rule 12(b)(6) motion is to "test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King*, 825 F.3d at 214 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). "Thus, when considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020). Nevertheless, only facts can render a claim for relief plausible. "[F]ormulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is it sufficient for a plaintiff to plead facts merely consistent with liability. The plaintiff must plead enough factual content to nudge a claim across the border from mere possibility to plausibility. *Id.* at 570; *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

**Analysis**

Defendant Tschappatt argues that, though "Plaintiffs use the plural 'defendants' when mak[ing] allegations of discrimination," they "make no factual allegations that Mr. Tschappatt engaged in discriminatory actions — in fact, the only allegation that mentions Mr. Tschappatt directly is that he saw Dr. Payton when she was pregnant." Dkt. 20 at 3 (internal citation omitted.). He asserts that "[t]here are no allegations that he did anything, said anything or acted in any way toward the Plaintiffs," and "[b]ecause Plaintiffs make no factual allegations against [him], their Complaint against him cannot survive." *Id.*

But Defendant Tschappatt co-owns the apartment at issue with his wife, Defendant Arias, and they rented the apartment to Plaintiffs. Compl. ¶¶ 19–20, Dkt. 20 at 1–2, Dkt. 21 ¶¶ 19–20 (Answer denying that Defendant Tschappatt manages the rental property but admitting that he co-

7

owns it). The Fourth Circuit has recognized that "compliance with the . . . FHA . . . is 'nondelegable'" so "an owner cannot 'insulate himself from liability for . . . discrimination in regard to living premises owned by him and managed for his benefit merely by relinquishing the responsibility for preventing such discrimination to another party.'" *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 602 (4th Cir. 2010) (quoting *Walker v. Crigler*, 976 F.2d 900, 904 (4th Cir. 1992)).

Courts have found that "[i]t is consistent with the spirit of the [FHA] to hold all owners of property responsible for ensuring compliance with its provisions," as "[a]n owner of property cannot avoid compliance with the Act by delegating the duty not to discriminate." *Richards v. Bono*, No. 5:04CV484-OC-10GRJ, 2005 WL 1065141, at *7 (M.D. Fla. May 2, 2005). And "[s]everal courts have held that both spouses are liable when one spouse engages in discriminatory conduct while renting jointly owned property." *Id.*; *id.* at 7 n.5 (compiling relevant cases). Defendant Tschappatt cites no cases in which an FHA claim against a co-owner who did not personally engage in any discriminatory action under the FHA was found non-justiciable.

The Complaint alleges that Defendant Guallart spoke on behalf of herself *and* Defendant Tschappatt in many communications. *See, e.g.*, Compl. ¶¶ 1, 5, 48 ("*We* don't take families with children . . . ."; *id.* at ¶¶ 4, 44 ("As long as nothing changes on your end, *we* are happy to renew with you guys."); *id.* ¶ 13 ("*We* won't be bullied by you or anyone else. . . . Your note does nothing to reassure *us* that your attitude would change."); *id.* ¶ 41 ("with the weird times *we* are going through *we* decided to start advertising the unit to make sure *we* don't get behind"); *id.* ¶ 58 ("Please take this note as a confirmation that *we* will not renew the lease with you in August."); *id.* ¶ 62 ("This is [sic] notice of termination of your lease is to remind you in writing one more time and hand delivered under your door that *we*, the landlords of 501 Commerce St.

8

Charlottesville VA, will not renew the lease with you when it expires on July 31st."); *id.* ¶ 71 ("I wish it were different but, *we* don't want a year of difficulties and this is what I see with you there. I am sorry and wish you the best, but please don't write anymore, you are still insulting and bullying *us* in it (!!). . . . *We* hope that you find what you are looking for. *We* tired [sic] to be nice to you from the start and can't figure out what *we* have done to you. Luckily in the state of VA *we* don't have to have any relationship if *we* don't want to.") (emphasis added throughout).

Further, factual allegations throughout the Complaint support that both Defendants were Plaintiffs' landlords. *Id.* ¶ 29 (Plaintiffs "paid Defendants their prorated first month's rent, . . . security deposit, and . . . pet fee"); *id.* ¶ 62 (discussing that the lease cancellation notice placed under Plaintiffs' door was signed by "we, the landlords of 501 Commerce St."); *id.* ¶ 63 ("Defendants refused to renew the lease," *id.* ¶ 72 ("Defendants signed a one-year lease with a new tenant for 501 Commerce Street"); *id.* ¶ 83 (discussing that Plaintiffs "relinquished the Apartment to Defendants"); *id.* ¶¶ 90–96 (discussing that Defendants withheld Plaintiffs' security deposit until the Charlottesville City Court ordered its return). As such, Plaintiffs have sufficiently alleged facts to support their claims against Defendant Tschappatt, as required by the *Twombly*, 550 U.S. at 570, standard.

## Conclusion

For the foregoing reasons, Defendant Tschappatt's motion to dismiss will be denied.

The Clerk of the Court is hereby directed to send this Memorandum Opinion to all counsel of record.

Entered this   17th   day of February, 2023.

9

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE